IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

TYRONE L. SMITH,

        Plaintiff,

   v.

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 04-6252

**OPINION**

APPEARANCES:

Robert Anthony Petruzzelli, Esquire
JACOBS, SCHWALBE & PETRUZZELLI, P.C.
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Andreea L. Lechleitner
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), to review the final decision of the Commissioner of the

Social Security Administration, denying the application of the

plaintiff, Tyrone L. Smith, for Disability Insurance Benefits

under Title II of the Social Security Act.  42 U.S.C. § 401, et
seq.  This Court must determine (1) whether the Administrative
Law Judge ("ALJ") properly determined Plaintiff's residual
functional capacity; (2) whether this Court should remand the
case to the Commissioner under 42 U.S.C. § 405(g) upon a showing
of new material evidence; and (3) whether the ALJ was required to
utilize vocational expert testimony under the holding in Sykes v.
Apfel, 228 F.3d 259 (3d Cir. 2000).  For the reasons state below,
this Court will affirm the decision of the Commissioner denying
Plaintiff's application for Disability Insurance Benefits.

I.   **BACKGROUND**

     A.   **Procedural History**

     On March 22, 2002, Plaintiff filed an application for
Disability Insurance Benefits, in which he alleged that he had an
onset of disability on January 4, 2002, due to back problems, as
well as arthritis of the knees, hands, elbows and wrist joints.
(R. at 16.)  His application was denied on May 14, 2002.  (R. at
30-32.)  Plaintiff filed a request for reconsideration on June
26, 2002, (R. at 35.), which was denied on September 26, 2002.
(R. at 37.)  Plaintiff filed a timely request for review by an
Administrative Law Judge ("ALJ").  (R. at 40.)  The hearing was
held in Voorhees, New Jersey on December 18, 2003, before ALJ
Daniel W. Shoemaker, Jr.  (R. at 192.)

ALJ Shoemaker issued a decision denying benefits on April 28, 2004.  (R. at 16-26.)  Plaintiff filed a timely request for review by the Appeals Council, and submitted additional evidence, including MRI results, X-ray results, and notes from an examination by Dr. Gerald S. Packman.  (R. at 174-191.)  The Appeals Council denied Plaintiff's request for review on October 29, 2004, finding that the April 28, 2004 decision of the ALJ would constitute the final decision of the Commissioner of the Social Security Administration.  (R. at 4.)  The Appeals Council determined that the additional evidence provided information about Plaintiff's condition subsequent to the relevant time period, and therefore did not affect the decision of whether Plaintiff was disabled on or before April 18, 2004.  (R. at 5.)  Plaintiff filed the present action with the Court on December 21, 2004, seeking judicial review of the ALJ's decision.

B.   **Evidence in the Record**

1.   **Personal and Work History**

Plaintiff was born on March 2, 1954.  (R. at 197.)  He graduated high school and completed two years of college.  (R. at 197.)  At the age of 17, Plaintiff joined the military, but was honorably discharged after only 17 days of service because he failed to meet the minimal physical standards of enlistment due

3

to limited motion of the lumbar spine related to scoliosis and Scheuermann's Disease.[1]  (R. at 126-27.)

On January 4, 2002, Plaintiff alleges that he had an onset of disability due to pain associated with Thoracolumbar Scoliosis[2] and Scheuermann's Disease, as well as arthritis in his knees, hands, elbow and wrist.  (R. at 80.)  He has not worked since that date.  (R. at 80.)

Prior to the onset of his alleged disability, Plaintiff was employed at Home Depot, first as a customer service representative and then as a member of the overnight freight crew.  (R. at 202.)  The customer service position required Plaintiff to sit at a desk for long hours and answer phones.  (R. at 202.)  Plaintiff testified that the constant sitting became unbearable, so he requested to move to a different position within the company.  (R. at 202.)  Plaintiff chose the lumber department, and eventually joined the overnight freight crew, which required unloading inventory from trucks.  (R. at 202.)  Plaintiff stated that his last position in freight aggravated his

---

[1]  Scheuermann's Disease is a disease in children that begins as a degeneration or necrosis followed by regeneration or recalcification of the vertebrae. See Dorland's Illustrated Medical Dictionary 1663 (30th ed. 2003).

[2]  Thoracolumbar Scoliosis is an appreciable lateral deviation in the normally straight vertical line of the spine, pertaining specifically to the thoracic and lumbar parts of the spine. See Dorland's Illustrated Medical Dictionary 1669, 1904 (30th ed. 2003).

condition and the pain eventually became so unbearable that he
could no longer work.  (R. at 100, 201.)

Prior to his work at Home Depot, Plaintiff worked as a
customer service representative for three different insurance
companies.  (R. at 203.)  The position required Plaintiff to sit
at a desk for approximately seven hours during an eight hour
shift.  (R. at 96.)  Plaintiff testified that the pain associated
with his condition prevents him from resuming work as a customer
service representative.  (R. at 204.)  He testified that sitting
at a desk becomes very uncomfortable.  (R. at 204.)  To alleviate
the pain associated with his condition, Plaintiff must be able to
constantly switch from a sitting to a standing position.  (R. at
204.)  However, the range of mobility associated with a customer
service position is limited because the representative must wear
a headset attached to a phone system and must use a computer
terminal.  (R. at 204.)  Additionally, Plaintiff testified that
he takes pain medication that makes him drowsy and susceptible to
making mistakes.  (R. at 204.)

Plaintiff testified that his back pain began around the time
he left the military in 1971 and has gotten worse over time.  (R.
at 92, 200.)  The pain associated with his condition may come
and go from time-to-time, but is generally almost constant.  (R.
at 205.)  At times, Plaintiff experiences stabbing, tingling and
numb sensations.  (R. at 205.)  Plaintiff testified that he can

5

stand for approximately 20 minutes and sit for approximately 15 minutes without difficulty.  (R. at 211-12.)  Plaintiff testified that the arthritis in his hands makes it difficult to carry objects and to turn door knobs, while the arthritis in his knees makes it difficult to get up from a squatting position.  (R. at 208-09.)

Plaintiff currently lives with his parents.  (R. at 89.)  He spends most of his day watching television, although he tries to move around as much as he can.  (R. at 209-10.)  He is able to cook for his parents several times a week, can take them to their medical appointments, run errands, and help around the house. (R. at 89.)  Plaintiff can do the dishes without much difficulty, although standing at the sink for long periods of time is uncomfortable.  (R. at 90.)  Plaintiff drives, but sitting for long distances becomes difficult and painful.  (R. at 90.)  While he has no trouble mentally, Plaintiff testified that his limitations are frustrating and demoralizing.  (R. at 213.) Plaintiff feels he is a responsible person and would rather be active and productive, but feels there is nothing he can do about his pain.  (R. at 213.)

### 2.  **Medical History**

On March 12, 2002, Plaintiff visited the emergency room of the Newcomb Division of the South Jersey Hospital System complaining of back pain that rendered him unable to stand.  (R.

6

at 148.)   A general examination was unremarkable and an x-ray of Plaintiff's lumbrosacral spine was normal.  (R. at 149, 155.) Plaintiff was diagnosed with an acute lumbar strain and was prescribed Cyclobenzaprine, a muscle relaxer, and Naproxen, a pain reliever.  (R. at 151-53.)

Plaintiff returned to the emergency room on March 20, 2002, complaining of pain and swelling in the fourth finger of his right hand.  (R. at 143.)  An examination was unremarkable and Plaintiff was diagnosed with acute paronychia.  (R. at 145.)

On March 27, 2002, Plaintiff was examined by Dr. Gerald S. Packman, an orthopedic surgeon, on referral from Dr. Anna Alberici for problems with low back pain.  (R. at 137.)  Dr. Packman noted that Plaintiff "moved about the office without great difficulty," but experienced "significant tenderness" in his low back area.  (R. at 137.)  Knee and ankle jerks were intact.  (R. at 137.)  Straight leg raising tests were mildly positive on the left side and negative on the right side.  (R. at 137-38.)  Strength and sensation tests were normal.  (R. at 138.) Dr. Packman also reviewed x-rays that Plaintiff brought with him to the examination.  (R. at 138.)  The x-rays showed scoliosis of the thoracolumbar spine, but were not satisfactory for properly evaluating kyphosis and showed no congenital abnormalities of the vertebra.  (R. at 138.)  Dr. Packman diagnosed Plaintiff with a mild left sciatica and recommended exercises.  (R. at 138.)  He

recommended that Plaintiff switch to a less expensive over-the-counter pain medication and gave him a prescription for a muscle relaxant. (R. at 138.) Dr. Packman suggested that Plaintiff return for another visit in several weeks. (R. at 138.)

In an April 18, 2002 report, Dr. Alberici noted that her prior physical examination of Plaintiff was "totally unremarkable." (R. at 139.) Plaintiff had some mild scoliosis of the lumbar spine, but otherwise had no abnormalities. (R. at 139.) Dr. Alberici reported that Plaintiff was "ambulating fine around the room, and was getting off and on the table without any difficulty." (R. at 139.) X-rays of Plaintiff's lubosacral spine revealed "a normal spine with no abnormalities." (R. at 139.) Dr. Alberici noted that she had referred him to Dr. Packman, and restated Dr. Packman's findings. (R. at 139.) Considering her own examination, Dr. Packman's examination and Plaintiff's medical records, Dr. Alberici concluded that Plaintiff "is capable of seeking employment." (R. at 140.) She found that plaintiff had "no limitations," and was capable of doing work including "standing, lifting, walking, carrying, handling objects, hearing, speaking and traveling." (R. at 140.) Dr. Alberici concluded that Plaintiff "should have no difficulties sustaining employment," and "could easily go back to the work that he was doing before...." (R. at 140.)

On June 24, 2002, Plaintiff returned for a second examination by Dr. Packman, complaining of continued back pain and sciatica, as well as pain in his wrist, neck, and hand.  (R. at 141.)  Dr. Packman examined Plaintiff's cervical spine flexion, lateral rotation and lateral bending.  (R. at 141.) Upper and lower extremity deep tendon reflexes were intact and symmetric.  (R. at 141.)  Dr. Packman noted that "I don't think I have much else to recommend for him," and no return appointment was made.  (R. at 141.)

On December 19, 2002, Dr. Packman completed an examination report for the State of New Jersey Division of Family Development.  (R. at 162.)  Dr. Packman diagnosed Plaintiff primarily with lower back pain, along with arthritis, Scheuermann's Disease, and hypertension.  (R. at 162.)  Dr. Packman concluded that Plaintiff was incapacitated to the extent that he could not work full time, and determined that Plaintiff's Functional Classification of Musculoskeletal Inadequacy was a Class III, indicating that Plaintiff's functional capacity was adequate to perform only little or none of the duties of usual occupation.  (R. at 163.)

On January 29, 2004, Dr. Khona conducted an examination of Plaintiff at the request of the Commissioner for the State of New Jersey Department of Labor.  (R. at 165.)  Dr. Khona noted that Plaintiff was able to walk normally, required no help changing,

and was able to get on and off the examining table without difficulty.  (R. at 166.)  Grip strength, hand and finger dexterity, and sensory responses were normal, except for sensation in the right lower leg.  (R. at 166.)  All other tests were negative.  (R. at 166-67.)  Dr. Khona noted that Plaintiff's cervical spine showed decreased lateral flexion, but that Plaintiff had a normal range of motion in the cervical spine, thoracic spine and lumbar spine.  (R. at 166-67.)  Other than Plaintiff's subjective complaints of pain, Dr. Khona concluded that there were no positive findings.  (R. at 167.)  Dr. Khona diagnosed Plaintiff with arthritis, Scheuermann's Disease, and scoliosis in his thoracolumbar area, and gave his prognosis as "fair."  (R. at 167.)  Dr. Khona concluded that Plaintiff "is trainable for some kind of sedentary job, if [the job] is not for lifting."  (R. at 167.)

On June 24, 2004, more than one year since last examining Plaintiff, Dr. Packman conducted another evaluation.  (R. at 188.)  Plaintiff complained of pain in both his knees, back, neck and wrists.  (R. at 188.)  Dr. Packman noted that Plaintiff's complaints were consistent with those in the past, although pain in his upper arm and shoulders was new.  (R. at 188.)  Plaintiff "move[d] about the office without difficulty."  (R. at 188.)  However, his cervical spine flexion was limited and extension was "virtually nil," causing Plaintiff some discomfort in the base of

10

the neck, but not on either side.  (R. at 188.)  All remaining
tests were negative, and an x-ray of Plaintiff's left knee was
unremarkable.  (R. at 188.)  Dr. Packman recommended that
Plaintiff have x-rays of his left wrist, cervical spine, and
lumbar spine, and an MRI of his left knee.  (R. at 189.)

Plaintiff had numerous x-rays and MRIs taken in July 2004.
(R. at 175-85.)  Dr. Packman evaluated the results and concluded
that Plaintiff had "severe arthritis involving his left knee and
significant cervical spine spondylosis, foraminal stenosis and
disc herniation in the cervical spine and disc herniation in the
lumbar spine."  (R. at 177.)  Dr. Packman noted that Plaintiff
was seeking social security disability, which he concluded was
"probably appropriate."  (R. at 177.)

Subsequent to Plaintiff's examination, Dr. Packman completed
another examination report for the State of New Jersey Division
of Family Development.  (R. at 186.)  Dr. Packman again concluded
that Plaintiff was incapacitated to the extent that he could not
work full time and noted that Plaintiff suffered limitations on
standing, walking, climbing, stooping, and bending, along with
lifting.  (R. at 186.)

## II.  **DISCUSSION**

In his April 28, 2004 decision, ALJ Shoemaker found that there was substantial evidence that Plaintiff was not disabled. Plaintiff has appealed this decision.

### A.  **Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  <u>Id</u>. (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  A district court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182.  However, an ALJ need not explicitly discuss every piece of relevant evidence in his decision.  <u>See</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001).

Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   <u>Standard for Disability Insurance Benefits</u>**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §1382c(a)(3)(A). Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he

applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining

disability that require application of a five-step sequential

analysis.  20 C.F.R. § 404.1520.  This five-step process is

summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe
     impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
     and has lasted or is expected to last for a continuous
     period of at least twelve months, the claimant will be
     found "disabled."

4.   If the claimant can still perform work he has done in
     the past ("past relevant work") despite the severe
     impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's
     ability to perform work ("residual functional
     capacity"), age, education, and past work experience to
     determine whether or not he is capable of performing
     other work which exists in the national economy.  If he
     is incapable, he will be found "disabled."  If he is
     capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is incapable

of performing work in the national economy.

This five-step process involves a shifting burden of proof.

Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150,

1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas, 823 F.2d at 777.  See Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, ALJ Shoemaker concluded that Plaintiff was not under a disability as defined under Title II of the Social Security Act at any time through the date of his decision.  (R. at 17.)  At step one, the ALJ found that Plaintiff was not currently working and did not engage in any substantial gainful work since January 4, 2002, the date of his alleged onset of disability. (R. at 17.) At step two, he found that Plaintiff suffers from a "severe" impairment within the meaning of the Act due to chronic low back pain syndrome limiting Plaintiff's ability to perform some basic work-related activities.  (R. at 17.)  The ALJ concluded that the diagnosis of arthritis of major joint and neck pain did not provide evidence of a severe impairment.  (R. at 17.)  At step 3, the ALJ found that chronic low back pain syndrome did not meet or equal the criteria of an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four, the ALJ concluded that

16

Plaintiff could perform his past relevant work as a customer service representative despite the severe impairment.  Therefore, the ALJ found Plaintiff not disabled and denied his request for Disability Insurance Benefits.  (R. at 25-26.)

###### C.   **Plaintiff's Arguments**

Plaintiff argues that the Commissioner's decision denying him benefits was improper because (1) the ALJ improperly determined Plaintiff's residual functional capacity; and (2) the ALJ failed to appropriately utilize vocational expert testimony as required under Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000).  Additionally, Plaintiff argues that this Court should remand the case to the Commissioner under 42 U.S.C. § 405(g) upon a showing of new material evidence.  Plaintiff claims the Commissioner's final order of "no disability" should be reversed; or in the alternative, the case should be remanded for resolution after full consideration of the new evidence.  Finally, Plaintiff further argues that the administrative record provides sufficient basis for an award of summary judgment in his favor.

###### 1.   **Determination of Plaintiff's Residual Functional Capacity**

Plaintiff first argues that the ALJ failed to properly determine his residual functional capacity, specifically for failing to consider new evidence submitted at the Appeals Council level.  (Pl. Br. at 7-13.)  The sequential evaluation process for determining disability requires an assessment of the claimant's

17

functional limitations and his remaining capacities for work-related activities, referred to as the claimant's residual functional capacity ("RFC").  <u>See</u> SSR 96-8P.  A claimant's RFC represents his maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.[3]  <u>Id</u>.  The RFC assessment is a function-by-function assessment based upon the relevant evidence of the claimant's ability to do work-related activities.  <u>Id</u>.  The assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  <u>Id</u>.  The assessment of the claimant's RFC is used at step 4 of the sequential evaluation process to determine whether the claimant is able to do past relevant work. <u>Id</u>.  The ALJ must consider all relevant evidence when determining an individual's residual functional capacity at step four. <u>Fargnoli v. Halter</u>, 247 F.3d 34, 41 (3d Cir. 2001).

In this case, there is substantial evidence to show that the ALJ thoroughly reviewed all relevant evidence in the record and properly assessed Plantiff's RFC.  Although Plaintiff argues the ALJ failed to properly consider new evidence submitted at the Appeals Council level (Pl. Br. at 11.), the ALJ was required to base his decision <u>only</u> on evidence offered at hearing or

---

[3] A "regular and continuing basis" means eight hours per day, for five days per week, or an equivalent work schedule.  <u>See</u> SSR 96-8P.

otherwise included in the record at the time of the decision.  20
C.F.R § 404.953.  More importantly, "[e]vidence that was not
before the ALJ cannot be used to argue that the ALJ's decision
was not supported by substantial evidence."  Matthews v. Apfel,
239 F.3d 589, 594 (3d Cir. 2001).  Because the new evidence
submitted to the Appeals Council was not before the ALJ at the
time of his decision, the ALJ was not required to consider the
evidence.  Therefore, Plaintiff's argument -- that the ALJ's
decision was not supported by substantial evidence for failure to
consider that new evidence -- must fail.

     In this case, the ALJ adequately reviewed all relevant
evidence in assessing Plaintiff's RFC and making a determination
of "not disabled."  The ALJ first considered Plaintiff's own
statements about the requirements of his past occupation to
determine whether Plaintiff could continue to do his past
relevant work.  (R. at 18-19.)  The ALJ cited Plaintiff's initial
application for Disability Benefits, where Plaintiff stated that
his past work as a customer service representative involved
answering telephones, using a computer, providing customer
service and writing reports.  (R. at 22.)  Plaintiff stated that
the job required half an hour of walking, one hour of standing,
and 6.5 hours of sitting.  (R. at 22.)  Lifting and carrying
responsibilities were limited to standard office work, with 10

19

pounds being the heaviest weight Plaintiff was required to lift. (R. at 22.)

The ALJ next considered the medical reports of Dr. Alberici, Dr. Packman, and Dr. Khona in great detail and stated the conclusions he drew from each report.  (R. at 19-22.)  The ALJ found that all of the medical reports were consistent with the determination that Plaintiff had a residual functional capacity to perform his past work as a customer service representative. (R. at 23.)  Specifically, the ALJ relied on Dr. Khona's report that Plaintiff could sit for an unlimited amount of time; stand or walk up to 2 hours in an 8 hour work day; and occasionally lift and carry up to 10 pounds of weight as his previous customer service job required.  (R. at 23.)  The ALJ found Dr. Khona's report consistent with those of Dr. Packman and Dr. Alberici, stating that "the entire record is totally consistent in all venues, by all treating and examining physicians."  (R. at 23.)

The ALJ noted Plaintiff's testimony that he could sit comfortably for only 10-15 minutes at a time; stand comfortably for 15-20 minutes before needing to shift his position; and walk only 50 feet without a problem.  (R. at 18.)  However, the ALJ found Plaintiff's statements concerning his impairments and their impact on his ability to work not entirely credible given (1) Plaintiff's own description of his activities and lifestyle; (2) the degree of medical treatment required for his condition; (3)

20

discrepancies between Plaintiff's assertion and information contained in the documentary reports; (4) the claimant's demeanor at his hearing; (5) the reports of the treating and examining practitioners; (6) Plaintiff's medical history; (7) the findings made on examination; and (8) Plaintiff's assertions concerning his ability to work.  (R. at 24.)

The ALJ also noted the December 19, 2002 evaluation by Dr. Packman for the State of New Jersey Division of Family Development.  (R. at 20.)  However, the ALJ noted that the only limitation indicated was on stooping and that Dr. Packman recommended only medication and home exercise.  (R. at 20.)

Based on the evidence in the record, the ALJ concluded that Petitioner has the RFC to perform at least sedentary work activities if not light work activities.[4]  (R. at 23.) Plaintiff's previous occupation as a customer service representation was of a sedentary type.  (R. at 23.)  Therefore, the ALJ concluded in the fourth step of the sequential evaluation process that Petitioner retained the RFC to return to his past relevant work, and was thus not disabled.  (R. at 23.)  Because

------

[4] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 CFR § 416.967.

the ALJ's determination, which became the final decision of the Commissioner upon denial of review by the Appeals Council, was supported by substantial evidence, the decision of the Commissioner will be upheld.

### 2. Remand to Evaluate New Evidence Under 42 U.S.C. § 405(g).

Plaintiff next argues that this Court should remand the case to the Commissioner pursuant to its authority under 42 U.S.C. § 405(g).  The Code of Federal Regulations lists circumstances under which the Appeals Council will review an Administrative Law Judge's decision.  20 C.F.R. §§ 404.970, 416.1470.  The regulations state:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).  On October 7, 2004, Plaintiff submitted new evidence to the Appeals Council consisting of MRI studies, X-ray studies, and an examination by Dr. Gerald Packman completed in July 2004, and requested that the Appeals Council consider the evidence as new and material.  (R. at 174-191.)  On October 29,

22

2004, the Appeals Council denied the request for review, and stated, that because the new evidence related to a time period after the April 28, 2004 ALJ decision, it did not affect the decision regarding whether Plaintiff was disabled on or before that date.  (R. at 4-5.)

No statutory provision authorizes the district court to review the Appeals Council decision to deny review.  Matthews, 239 F.3d at 594.  However, if a claimant proffers evidence in the district court that was not previously presented to the ALJ, the court may remand the case to the Commissioner only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...."  42 U.S.C. § 405(g). Three elements must be shown before a case may be remanded for consideration of new evidence.  Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).  First, the evidence must be "new" and not merely cumulative of what is already in the record.  Id.  Second, the evidence must be "material," meaning that the evidence is relevant and probative, and there is a reasonable possibility that the new evidence would have changed the outcome of the determination.  Id.  Finally, the Plaintiff must demonstrate "good cause" for not having incorporated the new evidence into the record at the administrative proceeding.  Id.

In this case, Plaintiff has not satisfied his burden of proof. First, most of the additional evidence submitted is not new. At step two of the sequential evaluation process, the ALJ determined that Plaintiff suffered from a severe impairment resulting from chronic low back pain syndrome. (R. at 17.) The ALJ specifically found that the diagnosis of arthritis of major joint and neck pain did not constitute a severe impairment. (R. at 17.) That determination has never been challenged. Therefore, additional evidence submitted related to arthritis in Plaintiff's joints and neck, including the MRI and x-ray reports of Plaintiff's wrist, cervical spine and knee, is irrelevant to the determination of whether Plaintiff is disabled due to his severe impairment related to chronic low back pain. The additional evidence also includes x-rays of Plaintiff's lumbosacral spine. (R. at 175-91.) However, the record before the ALJ included evaluations of an x-ray of Plaintiff's lumbrosacral spine by Dr. Packman and Dr. Alberici, which the ALJ considered in his decision (R. at 19-22.) Conversely, although the record before the ALJ contained reports by Dr. Packman, the 2004 reports by Dr. Packman were compiled after the ALJ decision and therefore could not have been presented at the hearing and could be considered new. See Szubak, 745 F.2d at 833 (stating that medical reports are new in the sense that they were compiled

24

after the Secretary's first decision, and therefore could not have been presented at the hearing).

However, the new evidence is not material.  "An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  Id. (citing Ward v. Schweiker, 686 F.2d 762 (9th Cir. 1982))  In this case, the relevant time period is from January 4, 2002, the date of the onset of Plaintiff's claimed disability, to April 28, 2004, the date the ALJ decision became final.  The new evidence submitted relates to a time period after June 2004.  Medical records that postdate the ALJ decision and speak only to the applicant's current condition, rather than to his condition at the time his application was under consideration by the Commissioner do not meet the standard for new and material evidence.  See Schmidt v. Barnhart, 395 F.3d 737, 742 (7th Cir. 2005)(holding that medical records that document an applicant's condition as it existed after the ALJ rendered his decision, while "new," do not constitute "material" evidence for purposes of a potential remedy under 42 U.S.C. §405(g) because evidence is material only to the extent that it could have affected the outcome of the ALJ's decision).  Additionally, the additional evidence may represent the subsequent deterioration of

25

Plaintiff's previously non-disabling condition.  Dr. Packman examined and reported on Plaintiff's condition several times during the relevant time period. Any changes noted in his 2004 report could represent, at most, deterioration occurring after the relevant time.

Finally, Plaintiff failed to demonstrate good cause for the failure to incorporate the additional evidence into the record in a prior proceeding.  To justify a remand based on new evidence, as the Court of Appeal has noted, the plaintiff must present "some justification for the failure to acquire and present such evidence to the Secretary." Szubak, 745 F.2d at 834.  Otherwise, a claimant "might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of 'obtaining another bite of the apple' if the Secretary decides that the claimant is not disabled." Id. As mentioned, the initial record included x-ray reports of Plaintiff's lumbrosacral spine.  Plaintiff provided no reason for why he could not have also included MRI and additional x-ray reports during the prior two years during which his application was under consideration. In fact, Plaintiff offered no argument that the good cause requirement was satisfied.  (Pl. Br. 15.)

Because Plaintiff failed to demonstrate that the additional evidence submitted was new and material, and failed to show good cause for not incorporating the evidence into the record in the

prior proceeding, Plaintiff's request to remand the case under 42
U.S.C. § 405(g) is denied.  However, Plaintiff is not precluded
from introducing the additional evidence in a new application for
Disability Insurance Benefits commencing upon a date subsequent
to the ALJ's determination under review here.

### 3.   Failure to Utilize Vocational Expert Testimony

Plaintiff next claims that the ALJ failed to elicit and
consider testimony from a vocational expert as required by the
holding in Sykes v. Apfel, requiring, at a minimum, that the case
be remanded to take vocational expert testimony. See 228 F.3d 259
(3d Cir. 2000).

The court in Sykes considered whether the Commissioner could
reach a conclusion of "not disabled" at step five of the
sequential evaluation process by relying on the medical-
vocational guidelines, or "grids," promulgated under the Social
Security Act, where the claimant has both exertional and
nonexertional impairments.  Sykes, 228 F.3d at 260-61.  The
medical-vocational guidelines establish the types and number of
jobs that exist in the national economy for claimants with
exertional impairments.  Id. at 263.  Exertional impairments
affect the claimant's ability to meet the strength demands of the
job for sitting, standing, walking, lifting, carrying, pushing,
and pulling.  20 C.F.R. § 404.1569a.  Nonexertional impairments,
on the other hand, involve limitations that do not affect a

27

claimant's physical strength but may nevertheless prevent him from engaging in substantial gainful employment.  20 C.F.R. § 404.1545(d).  The court in Sykes held that the Commissioner cannot determine that a claimant's nonexertional impairments do not render him unable to perform work in the national economy without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of that fact.  Sykes, 228 F.3d at 261.

Plaintiff's reliance on Sykes in this case is misplaced. The holding in Sykes applies only when a claimant has both exertional and non-exertional limitations, and when the ALJ proceeds to step five of the sequential evaluation process.  In this case, the ALJ did not find that Plaintiff had any non-exertional limitations and reached the decision of "not disabled" at step four of the sequential evaluation process.  Therefore, Plaintiff's request for a remand to take vocational expert testimony is denied.

## III.  CONCLUSION

For the reasons stated above, the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits is affirmed.  The accompanying order is entered.


December 21, 2005                **s/ Jerome B. Simandle**
Date                            Jerome B. Simandle
                                U.S. District Judge


28